**AFFIRM; and Opinion Filed June 1, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00807-CR
### No. 05-14-00808-CR

**NAKIA JUAN BROWN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause Nos. F12-45736-K & F12-45737-K**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Brown
Opinion by Justice Fillmore

A jury convicted Nakia Juan Brown of two aggravated robbery offenses, and the trial court assessed punishment of forty years' imprisonment in each case. Brown contends the trial court erred by admitting into evidence a letter to the Dallas County District Attorney that was not properly authenticated. We affirm the trial court's judgment.

### Background[1]

On June 28, 2012, Omar Al Captain and his eighteen-year-old brother, Sami Abdulqader, were leaving the Tche Tche Hookah restaurant when they were approached by two men. Captain saw two additional men, one sitting in the driver's seat of a car parked with its lights off and one

---

[1] Because Brown has not challenged the sufficiency of the evidence to support the convictions, we recite only those facts necessary to address Brown's complaint on appeal.

"watching the backs" of the first two men. Captain described one of the two men approaching him and his brother as an African-American in his late thirties, of medium height, heavyset, with a bushy beard. The other man was an African-American about the same size as the first man, but much younger.

The two men approaching Captain and Abdulqader had guns and ordered Captain and Abdulqader to get on the ground. Although the younger man put his gun into his pocket after Captain and Abdulqader were on the ground, the older man with the bushy beard "had his hand on the gun the entire time." According to Captain, the two men were "serious" and both he and his brother were in fear for their lives. The men began cursing, hitting, and kicking Captain and Abdulqader. Captain told the men to take everything he had and that Abdulqader had just moved to this country and did not have a cell phone or money. The two men took everything out of Captain's and Abdulqader's pockets, while a third man went through Captain's car. The men took Captain's checkbook, wallet, cell phone, and cash, Abdulqader's wallet, and a small Gerber utility knife.

Captain believed the robbers saw or heard something that caused them to leave. The men got into the parked car occupied by one of the other men, which Captain described as an old black or dark grey Nissan Altima or Maxima. Abdulqader then started running toward the "building," and Captain heard a loud noise. Captain thought the men had shot Abdulqader. Captain, who has military training, got a gun from the glove box of his car and fired at the tires of the Nissan in an attempt to "slow them down." After the police arrived, they found Abdulqader hiding by the building.

Richardson police officer Joshua Davis broadcast a description of the suspects over the police radio. Richardson police officer Steve Hooten was responding to the robbery call when he heard the description of the suspects and that they were last seen driving west on Arapaho Road

–2–

toward Coit Road in a black Nissan. Officer Hooten drove north on Coit Road and saw four African-American men leaving the parking lot of a Whataburger on foot. Officer Hooten drove past the men and saw two of the men, later identified as Brown and Adam Jackson, start running across the road. Officer Hooten made a U-turn and requested backup. Several police officers responded to Officer Hooten's request and contacted the four men, Brown, Jackson, Calvin Church, and Bryan Beatty. Beatty immediately said he would tell the officers what had happened and spoke to one of the officers.

The officers searched the area around the four men. Officer Hooten backtracked to where he saw Brown and Jackson walking and found a gun in the grassy area between the sidewalk and the parking lot. He also found Captain's wallet in the grass between the sidewalk and the fence of an adjacent house. On the other side of the fence, in the backyard of the adjacent house, was Captain's checkbook, a black Gerber knife, a washcloth, and several dollar bills. Abdulqader's wallet was found on the top of some bushes. Beatty had Captain's cell phone in his pocket. When Jackson was searched following his arrest, it was discovered he had a set of keys to a Nissan in his pocket.

A black 1997 Nissan Maxima was found in the parking lot of the Whataburger. The car had a flat right tire and there was a floor jack underneath the car. There was a bullet fragment in the trunk of the car and an expended bullet in the parking lot several feet from the vehicle. Inside the car was a shirt, two gloves, and Beatty's identification.

Brown was charged with aggravated robbery of Captain and Abdulgader. The jury found Brown guilty of both offenses, and the trial court assessed punishment of forty years' imprisonment on each offense.

**Analysis**

On appeal, Brown contends the trial court erred by admitting into evidence a letter purportedly written by him after his arrest because the letter was not properly authenticated.

On July 16, 2012, a letter with a return address of:

Nakia Juan Brown
#12044314
N.T. 3-E-04
P.O. Box 660344
Dallas, Tx.  75266-0334

was mailed to Craig Watkins, the Dallas County District Attorney.  Larry Sandifer, an investigator with the Dallas County District Attorney's Office, verified that Brown's "book-in" number was 12044314 and that, on July 16, 2012, Brown was located in the "North Tower 3E04" of the Dallas County Jail.  Sandier testified the letter contained information about participation in the robbery.

After the State offered the letter for admission into evidence, Sandifer, on voir dire examination by Brown's counsel, testified Brown's book-in number was on his wristband.  Sandifer admitted that, hypothetically, another inmate could obtain Brown's book-in number from the wristband while Brown was asleep.  Further, if Brown sent a letter to another inmate, Brown's book-in number would be on that letter.  Finally, Brown's book-in number and location in the jail could be obtained by any member of the public from Dallas County's website.  According to Sandifer, he was not a handwriting expert and had not had a handwriting analysis performed on the letter.  Brown objected that a proper predicate had not been laid and the letter was hearsay.  The trial court overruled these objections and admitted the letter into evidence.

The prosecutor read the letter, which was signed by "Nakia Juan Brown," to the jury. In the letter, the writer referenced one of Brown's case numbers[2] and stated he had not yet been indicted, but wanted to plead guilty to the charges. He admitted to participating in the robbery by going "in one of the guy[']s pocket," but denied he had a gun or "beat anyone." He also noted the victim did not have any money. He claimed there were two other defendants "on charges," and the "other guy" involved in the robbery "beat the one guy and made the other one sit down while I checked him." He offered to plead guilty in exchange for a five-year sentence, but also indicated he would accept a ten-year sentence. He offered to testify against the other men who participated in the robbery, and requested Watkins contact his attorney, James Whalen. The trial court took judicial notice that Whalen was Brown's attorney at the time the letter was written.[3]

Brown asserts the letter was not properly authenticated because the evidence did not sufficiently establish he was the author of the letter. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a), 60 TEX. B.J. 1129 (1998, amended 2015). When a case is tried to a jury, it is the jury's role ultimately to determine whether an item of evidence is what its proponent claims. *Butler v. State*, No. PD-0456-14, 2015 WL 1816933, at *3 (Tex. Crim. App. Apr. 22, 2015). The trial court is required only to make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic. *Id.* (citing *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012)). We review the trial court's determination of whether the proponent of the evidence has met this threshold

---

[2] The author stated he had been charged with two aggravated robbery offenses, but referenced the same case number twice.

[3] Whalen was appointed to represent Brown on July 2, 2012. He withdrew as Brown's counsel on May 6, 2013.

–5–

requirement for an abuse of discretion. *Id.* We will not reverse the trial court's ruling so long as it is within the zone of reasonable disagreement. *Id.*; *Tienda*, 358 S.W.3d at 638. This standard of review has been described as a "liberal standard of admissibility." *Butler*, 2015 WL 1816933, at *3 (quoting Cathy Cochran, TEXAS RULES OF EVIDENCE HANDBOOK 922 (7th ed. 2007–08)).

A document may be authenticated in a number of ways, depending on the unique facts and circumstances of the case, so long as the evidence is sufficient to support a finding the matter in question is what the proponent claims. *Id.* Authenticating evidence may be direct or circumstantial. *Id.* at *5. A letter may be authenticated by distinctive characteristics found within the letter itself and by comparative reference of those characteristics to other circumstances shown to exist by the evidence presented at trial. *Id.* at *6; *see also* TEX. R. EVID. 901(b)(4) (evidence may be authenticated by "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances"). "[A] letter bearing the return address of a purported author, combined with other circumstances including its appearance and contents, may be sufficient to authenticate a letter as having been sent by the person purported to be its author." *Butler*, 2015 WL 1816933, at *4.

The letter in this case had a return address that contained Brown's unique book-in number and location in the Dallas County jail. The letter was signed by "Nakia Juan Brown." Further, the contents of the letter indicated the author had knowledge of the robbery consistent with the facts proved at trial and identified Brown's counsel at the time the letter was written. Finally, although Sandifer admitted another inmate or a member of the public could have obtained knowledge of Brown's book-in number and location in the jail, Brown offered no evidence of tampering or fraud concerning the letter. Absent evidence of tampering or other fraud, the mere possibility that someone other than Brown could have written the letter did not preclude the trial court from finding a reasonable juror could determine the letter was what the

State claimed it to be. *See Druery v. State*, 225 S.W.3d 491, 503 (Tex. Crim. App. 2007) (rejecting challenge to letter sent from jail even where there was possibility that person other than purported author knew and had access to all of author's identifying information).

We conclude the distinctive characteristics of the letter, combined with a comparison of the statements in the letter to facts known to exist by virtue of the evidence presented at trial, were sufficient to support a reasonable jury determination the letter was authentic and written by Brown. *See* Tex. R. Evid. 901(a), (b)(4); *Butler*, 2015 WL 1816933, at *3; *Tienda*, 358 S.W.3d at 638. Accordingly, the trial court did not abuse its discretion by determining the letter was sufficiently authenticated. *See Druery*, 225 S.W.3d at 502–03 (letter properly authenticated where defendant was in position to have mailed letter from jail, writer identified himself as defendant, and letter bore defendant's fingerprints, was addressed to defendant's cousin, discussed facts known to defendant about his case, and stated return address was false because writer did not want jail staff to read letter, and defendant did not present any evidence of tampering or other fraud concerning letter); *Barfield v State*, 416 S.W.3d 743, 749–50 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (in absence of evidence of tampering or falsification, letter was sufficiently authenticated by evidence that it contained unique identifiers, including inmate's name, identification number, address and cell block of facility where inmate was housed, and city, state, and zip code, contained a signature, and contents of letter included facts known to inmate); *Flores v. State*, 299 S.W.3d 843, 856–57 (Tex. App.—El Paso 2009, pet. ref'd) (letter properly authenticated where it was intercepted from defendant's mail, was signed with defendant's name, was addressed and sent to woman with whom defendant had a personal relationship, indicated jail in which defendant was confined as return address, and bore defendant's inmate number).

We resolve Brown's sole issue against him and affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140807F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NAKIA JUAN BROWN, Appellant

No. 05-14-00807-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas,
Trial Court Cause No. F12-45737-K.
Opinion delivered by Justice Fillmore,
Justices Bridges and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 1st day of June, 2015.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NAKIA JUAN BROWN, Appellant

No. 05-14-00808-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas,
Trial Court Cause No. F12-45736-K.
Opinion delivered by Justice Fillmore,
Justices Bridges and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 1st day of June, 2015.